# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOHN JONES,

                                        Plaintiff,

            - v -                                       Civ. No. 9:13-CV-00025
                                                                    (TJM/RFT)

    DR. VADLAMUDI, *et al.*,

                                        Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

JOHN JONES
*Pro se* Plaintiff
95-A-2574
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN              KELLY L. MUNKWITZ, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On January 7, 2013,[1] *pro se* Plaintiff John Jones, while incarcerated at Marcy

---

[1] The Second Circuit has held that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). It is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint. *Shaw*
(continued...)

Correctional Facility ("Marcy"), commenced a civil rights action, pursuant to 42 U.S.C. § 1983, alleging an Eighth Amendment medical indifference claim against Marcy's Facility Health Services Director, Dr. Krishna Vadlamudi, and Nurse Administrator Sandra Martin-Smith,[2] as well as a First Amendment retaliation claim against Nurse Martin-Smith. *See generally* Dkt. No. 1, Compl. On April 18, 2014, Defendants filed a Motion for Summary Judgment. Dkt. No. 55, Defs.' Mot. for Summ. J. Plaintiff submitted his Response in Opposition thereto. Dkt. No. 61, Pl.'s Resp. in Opp'n. As set forth below, the Court recommends granting Defendants' Motion for Summary Judgment.

## I. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v.*

---

[1](...continued)
*v. Superintendent Attica Corr. Fac.*, 2007 WL 951459, at *3 n.3 (N.D.N.Y. Mar. 28, 2007).

[2] Sandra Martin-Kara is now known as Sandra Martin-Smith. She will be referred to in this opinion as Sandra Martin-Smith. Dkt. No. 55-3, Defs.' Statement of Material Facts at n.1.

*Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Material Facts

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 55-8, Defs.' Mem.

of Law, at p. 2. Dr. Vadlamudi is a medical doctor employed by DOCCS as a Facility Health Services Director at Marcy Correctional Facility. Dkt. No. 55-4, Krishna Vadlamudi Decl., dated Mar. 20, 2014, at ¶ 2. Throughout the relevant time period, Martin-Smith was employed as a Nurse Administrator at Marcy Correctional Facility. Dkt. No. 55-5, Sandra Martin-Smith Decl., dated Mar. 19, 2014, at ¶ 3. As a Nurse Administrator, she did not have the authority to prescribe narcotic medication, nor the authority to discontinue a course of treatment issued by a primary care provider. *Id.* at ¶ 7. Generally, Plaintiff's Eighth Amendment claims arises out of treatment received and/or denied for his back pain. During his deposition, Plaintiff further testified that he was denied treatment for his conjunctivitis and enlarged prostate.[3]

### 1. *Back Pain*

Plaintiff's back pain stems from a 1993 car accident. Compl. at STATEMENT OF FACTS ¶ 2. In 2008, doctors at Albany Medical Center implanted a neurostimulator in Plaintiff's back to ease his back pain. *Id.* at STATEMENT OF FACTS ¶ 8. In July 2011, Dr. German, a neurology specialist at Albany Medical Center, operated on Jones to remove a titanium rod from his spine. Dkt. No. 56-2, Kelly Munkwitz, Esq., Decl., Ex. A, John Jones Dep., dated Nov. 26, 2013, at p. 37.

---

[3] The Court notes that Plaintiff did not amend his Complaint to add new claims raised at his deposition. Nevertheless, because these claims center around Dr. Vadlamudi's alleged denial of care, we consider them below. *See infra* Part I.C.

Dr. German told Jones that he would see him in six months for a follow-up appointment. Compl. at STATEMENT OF FACTS ¶ 10. Following surgery, Plaintiff returned to Mount McGregor Correctional Facility, was subsequently transferred to Mohawk Correctional Facility for approximately two months, and then transferred to Marcy on October 31, 2011, where he remained until April 2, 2013. *Id.* at STATEMENT OF FACTS ¶¶ 11-12; Jones Dep. at p. 10.

On October 31, 2011, the day Plaintiff was transferred to Marcy, the health services staff noted that Plaintiff had a neurostimulator implant and was on several narcotic medications including, Neurotin, Percocet, and Morphine. Dkt. No. 55-6, Krishna Vadlamudi & Sandra Martin-Smith Decls., Ex. A, Ambulatory Health Record Progress Note (hereinafter "Progress Note"), dated Oct. 31, 2011, at p. 3;[4] Martin-Smith Decl. at ¶ 11. On November 3, 2011, a consultation was submitted for Plaintiff to visit with a neurosurgery specialist at Walsh Regional Medical Center ("Walsh"). Progress Note, dated Nov. 3, 2011, at p. 9; Vadlamudi Decl. at ¶ 11. In response, Plaintiff stated that only Dr. German may provide him with continuing care, and he signed a form entitled, "Refusal of Medical Examination and/or Treatment," in which he refused to accept continuing care from specialists and neurological providers except for Dr. German. Dkt. No. 55-6, Vadlamudi & Martin-Smith Decls., Ex. A,

---

[4] The court will refer to the page numbers automatically assigned by this Court's Case Management Electronic Case Files System when citing to Exhibit A, as some of the records therein contain the same entry date.

Form 3195, dated Nov. 3, 2011, at p. 10. Shortly after signing this form, he sent a letter to DOCCS Commissioner Brian Fischer complaining about the medical staff at Marcy. *See* Dkt. No. 55-6, Vadlamudi & Martin-Smith Decls., Ex. A, DOCCS Lt., dated Nov. 17, 2011, at p. 14. Replying on behalf of the Commissioner, DOCCS Deputy Commissioner/Chief Medical Officer informed Plaintiff that he "cannot dictate what provider or location will provide [his] care" and that "[a]nother initial referral will be entered for [him] to be evaluated by neurosurgery at Walsh Regional Medical Unit Clinic." *Id.* Inmates housed at Marcy are generally sent to Walsh for speciality care because Marcy is closer to Walsh than it is to Albany Medical Center. Vadlamudi Decl. at ¶ 15.

On November 23, 2011, Plaintiff was seen by neurosurgery specialist Dr. Zupurk at Walsh Medical Center. Dkt. No. 55-6, Vadlamudi & Martin-Smith Decls., Ex. A, Consultation Rep., dated Nov. 18, 2011, at p. 18; Vadlamudi Decl. at ¶ 13. Based on Dr. Zupurk's recommendation, Plaintiff visited Dr. German sometime in February or March of 2012. Jones Dep. at p. 45; Vadlamudi Decl. at ¶ 13. Sometime after this visit, Plaintiff underwent a CT scan of his spine at Marcy and received a TENS Unit. Jones Dep. at pp. 46-47; Vadlamudi Decl. at ¶ 38.

According to Dr. Vadlamudi, the fact that Plaintiff had to take his Neurotin medication in crushed form indicated that Plaintiff had a history of misusing his

medication.  Vadlamudi Decl. at ¶¶ 8 & 42.  Based on a potential security threat[5] and his professional opinion that Plaintiff did not require Morphine in addition to Percocet and Neurotin, Dr. Vadlamudi discontinued Plaintiff's Morphine prescription upon his arrival at Marcy.  *Id.* at ¶¶ 9, 41, & 43.  However, on November 3, 2011, Plaintiff was seen by another Marcy primary care provider, Dr. Zacki, who reissued a thirty-day prescription for Morphine as well as other pain medication.  *Id.* at ¶ 10.  On November 17, 2011, Dr. Vadlamudi was informed by Marcy security that Plaintiff was misusing his medication.[6]  Progress Note, dated Nov. 17, 2011, at p. 15.  On November 18, 2011, in an attempt to wean Plaintiff off Morphine, Dr. Vadlamudi lowered Plaintiff's Morphine prescription to thirty milligrams followed by fifteen milligrams before discontinuing his Morphine medication, and ordered that his Percocet be administered in crushed form.  Progress Note, dated Nov. 18, 2011, at p. 15.  Dr. Vadlamudi determined that Plaintiff's back condition did not require Percocet and so, on December 13, 2011, Dr. Vadlamudi lowered Plaintiff's Percocet prescription from two tablets to one tablet daily for one week before it was discontinued.  Progress Note, dated Dec. 13, 2011, at p. 26; Vadlamudi Decl. at ¶ 21.  On December 15, 2011, Dr.

---

[5] According to the Defendants, in a correctional facility setting, extreme caution must be used when prescribing narcotic medication as an inmate may sell his medication to other inmates, or use it in ways contrary to its intended use. Vadlamudi Decl. at ¶ 41.

[6] Marcy security reported that Plaintiff was "tonguing" his medication.  Vadlamudi Decl. at ¶ 16.  "'Tonguing' is a term used to describe when inmates pretend to take medication while hiding the medication in their mouth or under their tongue."  Martin-Smith Decl. at n.1.

Zaki reissued Plaintiff a prescription for Percocet to be taken twice daily for six weeks. Vadlamudi Decl. at ¶ 22. On January 5, 2012, Plaintiff attended sick call seeking to have his Percocet renewed. The health services staff noted that Plaintiff did not appear to be in pain during sick call. *Id.* at ¶ 24. The next day, January 6, 2012, Dr. Vadlamudi completed a physical examination on Plaintiff, and concluded that "clinically there was no evidence that Plaintiff was in any discomfort." *Id.* at ¶ 25. Ten days later, on January 16, 2012, Dr. Zaki renewed Plaintiff's Percocet prescription for thirty days. Progress Note, dated Jan. 16, 2012, at p. 41. On February 20, 2012, Dr. Kahn, another Marcy primary care provider, discontinued Plaintiff's Percocet prescription. Progress Note, dated Feb. 20, 2012, at p. 44. The next day, Plaintiff attended sick call complaining that his Percocet prescription had been discontinued and that his legs were in pain. The health services staff, however, took note of his "steady gait." Progress Note, dated Feb. 21, 2012, at p. 47. That same day, Dr. Vadlamudi ordered that Plaintiff be weaned off of Percocet. Progress Note, dated Feb. 21, 2012, at p. 48; Vadlamudi Decl. at ¶ 29. He allowed Plaintiff to receive one tablet of Percocet for five days before discontinuing his prescription. Progress Note, dated Feb. 21, 2012, at p. 48; Vadlamudi Decl. at ¶ 29.

On March 20, 2012, Plaintiff was seen at sick call complaining of pain. Plaintiff's blood pressure was taken and, after being advised of the results, Dr. Zaki

ordered Plaintiff be given Percocet. When Plaintiff's blood pressure did not significantly change, Dr. Zaki prescribed a blood pressure medication, which successfully brought Plaintiff's pressure to a range that was no longer a concern. Progress Note, dated Mar. 20, 2012, at pp. 53 & 56; Vadlamudi Decl. at ¶ 32. Dr. Zaki's Percocet prescription was canceled the next day by Dr. Vadlamudi as he determined that the rise in Plaintiff's blood pressure was unrelated to any pain suffered by the Plaintiff. Instead, Plaintiff was directed to take his blood pressure medication. Vadlamudi Decl. at ¶ 33. On March 26, 2012, in addition to his Neurotin medication, Plaintiff was also prescribed Ibuprofen and Robaxin (a muscle relaxer). Progress Note, dated Mar. 26, 2012, at p. 58; Vadlamudi Decl. at ¶ 34. On April 7, 2012, Plaintiff's neurostimulator was adjusted by a Meditronic representative, which is a company that services such devices. Dkt. No. 55-6, Vadlamudi & Martin-Smith Decls., Ex. A, Consultation Rep., dated Apr. 7, 2012, at p. 61. Between July 2012 and September 2012, Plaintiff was referred by the pain clinic to receive lumbar epidural injections to relieve his back pain, which he refused. Vadlamudi Decl. at ¶ 37; Progress Notes, dated July 2, 2012, at p. 101 & July 17, 2012 at p. 103.

### 2. *Medical Permits*

On November 1, 2011, the day after Plaintiff was transferred to Marcy, he was seen by Dr. Zaki who approved the continuation of a medical permit assigned to him

by the previous correctional facility.  Progress Note, dated Nov. 1, 2011, at pp. 7-8;

Martin-Smith Decl. at ¶ 13.  The original medical permit provided Plaintiff with

special accommodations, including an extra mattress and extra pillow for his back.

On February 24, 2012, Dr. Zaki limited the medical permit to allow for one pillow and

mattress, instead of the two pillows and mattresses allotted under the previous medical

permit.  Progress Note, dated Feb. 24, 2012, at pp. 48-49.  Nurse Martin-Smith

informed the housing unit of the change in Plaintiff's medical permit.  Martin-Smith

Decl. at ¶ 24.

### 3.  *Conjunctivits*

    While in Marcy, Plaintiff had redness in his eyes due to conjunctivitis.  Jones

Dep. at p. 50.  He was taken to an eye specialist who prescribed eye medication, which

he received while incarcerated at Marcy.  *Id.* at p. 51.  Dr. Vadlamudi denied

Plaintiff's request to see the eye specialist for a follow-up appointment.

### 4.  *Prostate*

    Sometime in 2012, while housed at Marcy, Plaintiff was operated on by a

prostate specialist.  *Id.* at p. 53.  The specialist who treated Plaintiff's prostate

recommended that he return for a follow-up appointment.  *Id.*  Dr. Vadlamudi decided

to examine Plaintiff himself, but Plaintiff refused to submit to treatment.  Jones Dep.

at pp. 53-54.

## C.  Eighth Amendment

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd,* 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06).  To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference.  *Farmer v. Brennan,* 511 U.S. 825, 834–35 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir. 1994).  The first prong is an objective standard and considers whether the medical condition is sufficiently serious.  The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).  Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals' daily activities; or the existence of chronic and substantial pain."

*Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

Here, for the purposes of this Motion, Defendants concede that Plaintiff's back injury is a serious injury. Defs.' Mem. of Law, at p. 9. However, they contest that Plaintiff's conjunctivitis and prostate condition are sufficiently serious. *Id.* at p. 11.

### 1. *Dr. Vadlamudi*

With regard to Plaintiff's serious back injury, the Court finds that Dr. Vadlamudi did not act with deliberate indifference when he limited Plaintiff's back pain medication. Plaintiff was at all times taking Neurotin and, between July 2012 and September 2012, was referred by the pain clinic to receive lumbar epidural injections to relieve his back pain, which Plaintiff refused. Vadlamudi Decl. at ¶ 37; Progress Notes, dated July 2, 2012, at p. 101 & July 17, 2012 at p. 103. Furthermore, Dr. Vadlamudi, convinced that Plaintiff was misusing his narcotics medication, attempted on several occasions to wean Plaintiff off the drugs before discontinuing his prescription. To be sure, the court cannot conclude that Dr. Vadlamudi's orders evince "a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway II,* 99 F.3d 550 at 553). And, because every doctor does not treat an illness in the same way, the mere differences in treatment by Drs. Vadlamudi and Zacki does not evince culpability. *McKenna v. Wright*, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002). There is no Eighth Amendment claim "when a doctor disagrees with the professional judgment of another doctor." *Id.*

Plaintiff also contends that Dr. Vadlamudi acted with deliberate indifference when he denied his request to visit with an outside specialist of his choosing. In

particular, Plaintiff complains that he was not allowed to return to Dr. German at Albany Medical Center for follow-up care, but instead was referred for a consultation with a neurosurgery specialist located at Walsh. Progress Note, dated Nov. 3, 2011, at p. 9.

An inmate does not have an Eighth Amendment claim under Section 1983 simply because he disagrees with a particular course of treatment so long as the treatment he received was adequate. *Robinson v. Vadlamudi*, 2014 WL 1239262, at *7 (N.D.N.Y. Mar. 25, 2014). "The word 'adequate' reflects the reality that 'prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'" *Id.* (quoting *Jones v. Westchester Cnty. Dep't of Corrs.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008)). "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Id.* (quoting Sonds v. St. Barnabas Hosp. Corr. Health serv., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)). Thus, Plaintiff falls short of demonstrating that Dr. Vadlamudi acted with reckless disregard to his back condition by referring him to a different neurosurgery specialist. *Farmer v. Brennan,* 511 U.S. at 836. More significantly, Plaintiff was seen by various specialists to care for his

back pain: he was seen by neurosurgery specialist Dr. Zupurk at Walsh Medical Center on November 23, 2011; based on Dr. Zupurk's recommendation, he visited Dr. German sometime in February or March of 2012; and, on April 7, 2012, a Meditronic representative visited him to adjust his neurostimulator. Jones Dep. at p. 45; Vadlamudi Decl. at ¶¶ 13, 35, & 48.

Lastly, the Court agrees with Defendants that neither the redness of the eyes caused by conjunctivitis nor Plaintiff's prostate condition constitute serious medical conditions. *See Eldridge v. Williams*, 2013 WL 4005499, at *11 (S.D.N.Y. July 30, 2013) (signaling that mild asthma, headaches, and irritated and water eyes are not a serious medical condition for Eighth Amendment purposes). Either way, Plaintiff was taken to an eye specialist who prescribed medication for his conjunctivitis, which he received at Marcy. Jones Dep. at pp. 50-51. He was also taken to a specialist who performed surgery on his prostate. *Id.* at p. 53. Although Plaintiff was not returned to that particular specialist for a follow-up appointment, he was scheduled to see Dr. Vadlamudi for continuing care, which he refused. *Id.* at pp. 53-54. Because this Court finds that Dr. Vadlamudi provided Plaintiff with a reasonable course of treatment at all times, this Court cannot conclude, as a matter of law, that Dr. Vadlamudi acted with deliberate indifference towards Plaintiff's medical condition(s). Thus, we recommend **granting** Defendants' Motion as it pertains to Dr. Vadlamudi.

## 2. *Nurse Martin-Smith*

To the extent that Plaintiff's *pro se* Complaint can be construed to allege a medical indifference claim against Nurse Martin-Smith, the Court finds that such claim fails. The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, Martin-Smith was a Nurse Administrator at Marcy. Martin-Smith Decl. at ¶ 6. As a Nurse Administrator, she did not have the authority to prescribe narcotic medication, nor the authority to discontinue a course of treatment. *Id.* at ¶ 7. Therefore, Plaintiff fails to establish that Nurse Martin-Smith had personal involvement with any decisions involving his course of treatment. Accordingly, we recommend **granting** Defendants' Motion with regard to the Eighth Amendment claim against Nurse Martin-Smith.

## D. Retaliation Claim

The Court is equally unpersuaded by Plaintiff's First Amendment retaliation claim against Nurse Martin-Smith. The Second Circuit has made it clear that an

inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004). Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment retaliation claim, a plaintiff must allege "1) that the speech or conduct at issue was protected, 2) that the defendant took adverse action against the plaintiff, and 3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d at 384 (citations

omitted). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493).

In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendant to show that he or she would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d at 79 (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977) & *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994)); *see also Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002) (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal quotation marks and citations omitted)); *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15,1997)

Here, Plaintiff appears to claim that, in retaliation for a November 2011 complaint he submitted to DOCCS Commissioner, Nurse Martin-Smith, in February 2012, informed the housing unit that his medical permit no longer allowed for an extra

mattress and an extra pillow.[7]  Compl. at STATEMENT OF FACTS ¶ 22; Jones Dep. at p. 74.  Yet, Plaintiff fails to adequately meet the First Amendment retaliation elements.  With regard to protected speech, Plaintiff claims he submitted a letter of complaint to DOCCS Commissioner, though a copy was not provided to the Court. Nevertheless, letter writing can constitute protected speech.

But, a nurse ensuring that a doctor's order is observed by staff is not an adverse action.  "In the context of a First Amendment retaliation claim, we have held that '[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'"  *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (citations omitted).  According to the evidence, on February 24, 2012, Dr. Zaki revised Plaintiff's medical permit to allow for only one mattress and one pillow, instead of two pillows and two mattresses allotted under the previous medical permit.  That same day, Nurse Martin-Smith ensured that the housing unit was aware of the change to Plaintiff's medical permit.  Martin-Smith Decl. at ¶ 25.  As previously mentioned, Nurse Martin-Smith did not have the authority to change an inmate's course of treatment.  *Id.* at ¶ 36.  She merely relayed Dr. Zaki's order to the housing unit.  Her

---

[7] Plaintiff claims Nurse  Martin-Smith knew about the complaint because she cursed at him and stated, "[y]ou have no reason to tell Albany what's going on in this facility." Jones Dep. at p. 74. Although Nurse Martin-Smith denies cursing at Plaintiff, she does not deny knowing that Plaintiff submitted a letter of complaint to the DOCCS Commissioner. *See generally* Martin-Smith Decl.

conduct is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Thus, the Court recommends **granting** Defendants' Motion for Summary Judgment on the retaliation claim.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 55) be **GRANTED** in its entirety and the case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 8 92 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: January 20, 2015
     Albany, New York

Randolph F. Treece
U.S. Magistrate Judge

*-21-*